0090

SOUTHEASTERN PVC PIPE, MFG., INC., Appellant, v. ROTHROCK
CONSTRUCTION CO., INC., Respondent.

(313 S. E. (2d) 50)

Court of Appeals

---

*Robert S. Haight, Jr.*, of *Harry Pavilack & Associates*, Myrtle Beach, *for appellant.*

*Dalton B. Floyd, Jr.*, of *Floyd, Cutts & Patrick*, Surfside Beach, *for respondent.*

Heard Dec. 14, 1983.

Decided Feb. 21, 1984.

GOOLSBY, Judge:

The appellant Southeastern PVC Pipe Manufacturing, Inc., brought an action against the respondent Rothrock Construc-

tion Company, Inc., to recover an amount owed by Rothrock for the purchase of pipes and other items. Rothrock counterclaimed alleging that Southeastern breached implied warranties of merchantability and of fitness for a particular purpose. The trial judge, sitting without a jury, affirmed the findings and recommendation of a special referee that Rothrock owed Southeastern the sum of $3,242.95. The trial judge, however, reversed the findings and recommendation regarding Rothrock's counterclaim and held that Southeastern had breached an implied warranty of merchantability and that Rothrock, as a consequence, was entitled to the sum of $7,176.85 in damages less the amount which it owed Southeastern. We affirm.

The question on appeal concerns whether the evidence reasonably supports the findings of the trial judge that Southeastern breached an implied warranty of merchantability and that Rothrock sustained damage as a result.

Because this is an action at law tried by the judge without a jury, the trial judge's findings of fact "have the force and effect of a jury verdict and are conclusive upon appeal when supported by competent evidence." *Wallace Concrete Pipe Company v. Downs, L.P.*, 272 S. C. 335 at 337, 251 S. E. (2d) 759 (1979). The rule is no different where, as here, the findings were made with a reference. *Townes Associates, Ltd. v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976). In a case like the instant one, therefore, we can neither weigh the evidence nor determine its preponderance. *Id.* All we can do is to determine whether there is any evidence that reasonably supports the factual findings of the trial judge. *Wallace Concrete Pipe Company v. Downs, L.P., supra.* Our review of the record reveals the presence of such evidence.

The testimony showed that in 1977 Rothrock purchased a quantity of pipes and solvent weld saddle tee joints from Southeastern for the purpose of constructing sewer lines. The saddle tee joints were required to make lateral connections. They came without straps, bands, or other extrinsic binders. Rothrock's superintendent for the job, George H. Skipper, Jr., was an experienced pipeline installer. Never before, however, had he laid pipe without using bands on lateral joints. Before the saddle tee joints were installed, Skipper expressed concern to James C. Gowan, Jr., Southeastern's sales representative, about the absence of bands. After checking with

others, Gowan assured Skipper that bands were not necessary for the proper installation of the saddle tee joints. Gowan added, however, that Rothrock could use bands, if it wanted to, but Rothrock would have to bear their expense. Still concerned and in an attempt to make certain that the cement properly held, Skipper secured the saddle tee joints with tie wire. Approximately 80 saddle tee joints were installed in this manner. During installation, Gowan visited the job site and took photographs of pipe in place for possible use in advertisements. He was impressed with Rothrock's skill in laying pipe.

The testimony also disclosed that after the main line and service lines were installed and while preparing for the system's final inspection, Skipper detected an abnormally high water infiltration. An examination of the manholes revealed nothing. Using mirrors to inspect the inside of a sewer line, Skipper and others determined that a service line was involved. Skipper dug down to a saddle tee joint connection in an effort to determine where the seepage was occurring. A crack was discovered beneath the service line at the saddle tee joint. Leakage had occurred at both its sides. Other saddle tee joints were then exposed and examined. Each connection was found to have the same flaw. Rothrock later unearthed and repaired 60 connections in order to reduce the infiltration.

The testimony further revealed that when the water infiltration problem was discovered, Gowan went to the construction site and conducted his own inspection. Rothrock's installation efforts appeared proper to Gowan. The latter also examined a fitting uncovered while he was at the job site. He discovered a leak in a part of the saddle. Once it was removed and the pipe cleaned, Gowan and others attempted to affix another saddle tee joint onto the pipe; however, it would not "seat down on the pipe" and "had a tendency to raise up . . . in the middle." The leakage problem was solved and the water infiltration reduced to an acceptable level only when Rothrock built collars around the fittings.

In our view, the evidence which we have outlined reasonably supports the inference that a defect in the saddle tee joints caused the water infiltration and that Southeastern breached an implied warranty of merchantability in their sale. Cf. Simmons v. CIBA-GEIGY Corp., 279 S. C. 26, 302 S. E. (2d) 17 (1983). While we agree with Southeastern that the evidence also reasonably supports the in-

ference that the water infiltration resulted from Rothrock's improper installation of the saddle tee joints, the duty to weigh the competing inferences belonged to the fact finder, in this case the trial judge. *See Nelson v. Atlantic Coast Line R. Co.*, 191 S. C. 345, 4 S. E. (2d) 273 (1939).

Accordingly, the judgment of the trial court is

Affirmed.

SHAW and CURETON, JJ., concur.